TURBIN CHU HEIDT, A Law Corporation
RICHARD TURBIN            (1044)
RAI SAINT CHU             (1133)
JANICE D. HEIDT           (8984)
737 Bishop Street, Suite 2730
Honolulu, Hawaii 96813
Telephone: (808) 528-4000
Facsimile: (808) 599-1984

Attorneys for Plaintiff
CATHERINE MCCLURE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| CATHERINE MCCLURE, | ) CIVIL NO. _____ |
|---|---|
| Plaintiff, | ) (Medical Malpractice) |
| vs. | ) |
| STEPHEN H. DENZER, M.D.; KEAUHOU URGENT CARE CENTER, INC.; and DOE DEFENDANTS 1-100; | ) COMPLAINT |
| Defendants. | ) |

## COMPLAINT

Plaintiff CATHERINE MCCLURE, by and through her attorneys, TURBIN CHU HEIDT, A Law Corporation, hereby allege and aver the following claims against Defendants STEPHEN H. DENZER, M.D.; KEAUHOU URGENT CARE CENTER, INC.; and DOE DEFENDANTS 1-100 :

## NATURE OF THE CASE

1. This is an action to recover damages sustained and suffered by Plaintiff CATHERINE MCCLURE as a result of alleged negligent medical care by STEPHEN H. DENZER, M.D. at KEAUHOU URGENT CARE CENTER in Kailua-Kona on the Island of Hawaii.

## PARTIES, JURISDICTION AND VENUE

2. At all times material hereto, Plaintiff CATHERINE MCCLURE resided in the State of Connecticut.

3. At all times material hereto, Defendant STEPHEN H. DENZER, M.D. (hereinafter "DR. DENZER") was a resident of the State of Hawaii and a duly licensed physician in the State of Hawaii.

4. At all times material hereto, Defendant KEAUHOU URGENT CARE CENTER, INC. (hereinafter "KEAUHOU URGENT CARE CENTER") was, and still is a for-profit domestic professional corporation organized and existing under the laws of the State of Hawaii for the purpose of providing medical care in the State of Hawaii.

5. Jurisdiction is properly vested in this Court pursuant to 28 U.S.C. §1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

6. Venue is properly before this Court pursuant to 28 U.S.C. §1391 because all events material to this Complaint occurred within the District of Hawaii, State of Hawaii.

7. Prior to filing this Complaint, Plaintiff and/or her counsel made a diligent search in order to ascertain the existence, full names, and identities of all persons or entities that may be legally responsible for the Plaintiff's injuries and damages but have no knowledge or information regarding the true names of defendants in this action designated as Doe Defendants 1 - 100. Said Defendants are persons, health care providers, corporations, partnerships, governmental bodies, political subdivisions and/or their agents, and/or other entities of whatever kind, and are sued herein under these fictitious names as their true names and identities are unknown to the Plaintiff, except that they may be connected in some manner with the named Defendants or may be connected to agents, servants, employees, employers, representatives, joint venturers, associates and/or independent contractors of the named Defendants or are independent of the named Defendants and were engaged in activities or negligent conduct alleged herein or in some other manner unknown to Plaintiff. The true names and capacities, whether individual, corporate, associate, or otherwise, of DOE DEFENDANTS 1 - 100, are unknown to Plaintiff who therefore sues said defendants by such fictitious names and will

ask leave of Court to amend this Complaint when the true names and capacities have been ascertained.

## STATEMENT OF FACTS

8. On August 4, 2015, Plaintiff CATHERINE MCCLURE went to Defendant KEAUHOU URGENT CARE CENTER in Kailua-Kona on the Island of Hawaii seeking treatment for her right eye, which was very red, painful, and swollen shut.

9. At Defendant KEAUHOU URGENT CARE CENTER, Plaintiff CATHERINE MCCLURE was seen by Defendant DR. DENZER, who identified a corneal foreign body in her right eye.

10. Plaintiff CATHERINE MCCLURE's condition was described as "severe" in the medical records from the visit.

11. Defendant DR. DENZER did not refer Plaintiff CATHERINE MCCLURE to the ophthalmology specialist, whose office was located approximately six miles away.

12. Defendant DR. DENZER removed the foreign body himself, first using a cotton swab and, when that failed, the tip of a needle. The medical records from the visit note that the foreign body was "plucked from the outer layer" and left a "shallow, ragged defect".

13. Defendant DR. DENZER then instructed Plaintiff CATHERINE MCCLURE to walk across the street to a pharmacy in order to purchase an eye patch and fill a prescription for an ophthalmic ointment, after which she was instructed to return to Defendant KEAUHOU URGENT CARE CENTER for further treatment.

14. After purchasing the items as instructed by Defendant DR. DENZER, Plaintiff CATHERINE MCCLURE returned to Defendant KEAUHOU URGENT CARE CENTER as directed, at which time Defendant DR. DENZER applied the ointment to the lower lid of her right eye, placed gauze on her eye, and covered it with the eye patch.

15. Defendant DR. DENZER advised Plaintiff CATHERINE MCCLURE to keep the patch on her eye and return the next day for a follow-up appointment with him.

16. As instructed by Defendant DR. DENZER, Plaintiff CATHERINE MCCLURE returned to Defendant KEAUHOU URGENT CARE CENTER on August 5, 2015 for a follow-up appointment.

17. At that follow-up appointment on August 5, 2015, after Defendant DR. DENZER removed the eye patch and gauze, Plaintiff CATHERINE MCCLURE informed Defendant DR. DENZER that she could not see out of her right eye, that it was still painful, and that there was drainage from her eye.

18. At that follow-up appointment on August 5, 2015, Defendant DR. DENZER examined Plaintiff CATHERINE MCCLURE's eye with a handheld black light and informed her that her eye was eighty percent (80%) healed but that it would take some time for the cells to grow back on the surface of her eye. It was noted in the medical records that there was a "very faint fluorescein smudge" on her eye. Defendant DR. DENZER changed the gauze on Plaintiff CATHERINE MCCLURE's eye, replaced the eye patch, and advised her to wear the patch and gauze for another day and then to follow-up with the company doctor when she returned home.

19. At no time did Defendant DR. DENZER tell Plaintiff CATHERINE MCCLURE that her eye was infected or that she was at risk of losing her eyesight. Defendant Dr. DENZER did not prescribe oral antibiotics or antibiotic eye drops. Defendant DR. DENZER did not use a microscope to examine Plaintiff CATHERINE MCCLURE's eye. Defendant DR. DENZER did not perform a vision exam or any other vision testing.

20. By the next morning, on August 6, 2015, Plaintiff CATHERINE MCCLURE's right eye was swollen with yellow discharge from the eye, and she was experiencing headache and pain from behind the eye. Because her eye was not getting better, Plaintiff CATHERINE MCCLURE asked her co-worker to take her to the Kona Community Hospital emergency department.

21. At Kona Community Hospital on August 6, 2015, the emergency department physician irrigated Plaintiff CATHERINE MCCLURE's eye and immediately put in antibiotic eye drops. The emergency department doctor advised Plaintiff CATHERINE MCCLURE that she had a severe infection in her eye and could lose her eye. Plaintiff CATHERINE MCCLURE was advised to see an ophthalmologist immediately, and the doctor arranged for a taxi to take her directly from the hospital to the ophthalmologist's office.

22. On August 6, 2015, Plaintiff CATHERINE MCCLURE was examined by ophthalmologist Dr. Kimberly Madsen at the Hawaii Cataract and Laser Institute in Kailua-Kona. Dr. Madsen found that Plaintiff CATHERINE MCCLURE's right eye had a corneal ulcer with hypopyon and edema. Because of the severe infection, Dr. Madsen was concerned that Plaintiff CATHERINE MCCLURE could lose her right eye.

23. Because Plaintiff CATHERINE MCCLURE had a flight to return home to Connecticut on the night of August 6, 2015, Dr. Madsen loaded her right eye with an antibiotic ointment and prescribed oral and topical antibiotics to be applied or taken at regular intervals until she could see an ophthalmologist in Connecticut.

24. Plaintiff CATHERINE MCCLURE stayed awake during the long trip from Hawaii to Connecticut so that she could take the medications and apply the

numerous topical antibiotics approximately every 15 minutes as prescribed by Dr. Madsen. The following evening Plaintiff CATHERINE MCCLURE's family members administered the topical antibiotics so that Plaintiff CATHERINE MCCLURE could finally sleep.

25. On August 8, 2015, Plaintiff CATHERINE MCCLURE was seen by Dr. Gilbert at Consulting Ophthalmologists in Farmington, Connecticut. After a complete examination, Dr. Gilbert diagnosed Plaintiff CATHERINE MCCLURE with a severe cornel ulcer of the right eye with a guarded prognosis.

26. Dr. Gilbert informed Plaintiff CATHERINE MCCLURE that she would likely suffer permanent vision loss due to central vision scarring, and that she would require extensive future medical treatment for her injured eye.

## COUNT I - RESPONDEAT SUPERIOR, APPARENT AGENCY, OSTENSIBLE AUTHORITY

27. Plaintiffs incorporate by reference paragraphs 1 through 26, above, as though fully set forth herein.

28. At all times relevant herein, the physicians, nurses, and other personnel who treated and cared for Plaintiff CATHERINE MCCLURE at Defendant KEAUHOU URGENT CARE CENTER were the employees, agents and servants of Defendant KEAUHOU URGENT CARE CENTER and were acting within the course and scope of their employment, agency and service with Defendant KEAUHOU URGENT CARE CENTER.

29. Plaintiff CATHERINE MCCLURE sought medical treatment at Defendant KEAUHOU URGENT CARE CENTER and was treated by Defendant DR. DENZER. Plaintiff CATHERINE MCCLURE was never informed that Defendant DR. DENZER was not an employee of Defendant KEAUHOU URGENT CARE CENTER.

30. Defendant KEAUHOU URGENT CARE CENTER is liable for the negligent acts, omissions and/or conduct of the physicians, health care providers, nurses, practitioners, and others in its employ or otherwise acting as its agents and/or servants who treated and cared for Plaintiff CATHERINE MCCLURE at Defendant KEAUHOU URGENT CARE CENTER, as set forth in this Complaint, under the doctrine of *respondeat superior,* ostensible authority, apparent agency and/or vicarious liability.

## COUNT II – NEGLIGENCE AND GROSS NEGLIGENCE

31. Plaintiff incorporates by reference paragraphs 1 through 30, above, as though fully set forth herein.

32. At all times material to this Complaint, Defendants, Defendants' employees, agents, and/or servant health care providers, health care professionals, nurses, and physicians, were under a legal duty to possess and apply the knowledge and to use the skill and care that is ordinarily possessed by reasonably well-

qualified and well-trained health care providers, health care professionals, nurses, and physicians in the State of Hawai'i.

33. On August 4, 2015 and August 5, 2015, Defendant DR. DENZER negligently failed to examine Plaintiff CATHERINE MCCLURE's right eye with a microscope.

34. On August 4, 2015 and August 5, 2015, Defendant DR. DENZER negligently failed to perform a vision exam or any other vision testing on Plaintiff CATHERINE MCCLURE's right eye.

35. On August 4, 2015 and August 5, 2015, Defendant DR. DENZER negligently failed to prescribe Plaintiff CATHERINE MCCLURE the correct and/or sufficient medication to treat her right eye infection.

36. On August 4, 2015 and August 5, 2015, Defendant DR. DENZER negligently covered her right eye with gauze and an eye patch.

37. On August 4, 2015 and August 5, 2015, Defendant DR. DENZER negligently failed to refer or transfer Plaintiff CATHERINE MCCLURE to see an ophthalmologist.

38. On August 4, 2015 Defendant DR. DENZER negligently injured Plaintiff CATHERINE MCCLURE's right eye by using a cotton swab and the tip of a needle which scrapped and cut her eye, thereby causing a severe infection, scarring and other permanent injuries.

39. On August 4, 2015 and August 5, 2015, Defendant DR. DENZER negligently failed to provide appropriate medical diagnosis, treatment, services and/or referral such that curative treatment and therapy could have been administered in a timely manner so as to prevent the significant permanent injuries Plaintiff suffered.

## COUNT III – NEGLIGENT FAILURE TO PROVIDE INFORMED CONSENT

40. Plaintiff incorporates by reference paragraphs 1 through 39, above, as though fully set forth herein.

41. Defendants, Defendants' employees, agents, and/or servant health care providers, health care professionals, nurses, and physicians, and each of them, had a duty to completely inform Plaintiff CATHERINE MCCLURE regarding the risk and benefits of any treatment to be provided or available which was not provided.

42. Defendants, Defendants' employees, agents, and/or servant health care providers, health care professionals, nurses, and physicians, and each of them, breached their duty by negligently failing to fully inform plaintiff CATHERINE MCCLURE of her treatment options and/or risks of treatment provided to obtain her informed consent.

43. If Plaintiff CATHERINE MCCLURE had been properly informed of the risk of the harms, injuries, and damages that in fact occurred, she, acting

rationally and reasonably, would have sought appropriate treatment from an ophthalmology specialist and/or would have agreed to treatment which was not provided to her or offered to her and/or would not have agreed to treatment provided by Defendants, Defendants' employees, agents, and/or servant health care providers, health care professionals, nurses, and physicians, and each of them.

## COUNT IV - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

44. Plaintiff incorporates by reference paragraphs 1 through 43, above, as though fully set forth herein.

45. As a direct, proximate, and legal result of the aforesaid negligent conduct and omissions of Defendants, Defendants' employees, agents, and/or servant health care providers, health care professionals, nurses, and physicians, and each of them, Plaintiff CATHERINE MCCLURE suffered and continues to suffer significant mental pain and emotional anguish from August 4, 2015 through the present, including fears of her losing her eye and vision and other injuries and damages in an amount to be determined at trial.

46. As a direct, proximate, and legal result of the aforesaid negligent conduct and omissions of Defendants, Defendants' employees, agents, and/or servant health care providers, health care professionals, nurses, and physicians, and each of them, Plaintiff CATHERINE MCCLURE sustained great emotional disturbance and shock and injury to her nervous system, all of which have caused,

continue to cause, and will cause in the future, great physical harm and mental pain and suffering, all to her general and special damage.

### COUNT V - NEGLIGENT HIRING, TRAINING, RETENTION, AND SUPERVISION

47. Plaintiffs incorporate by reference paragraphs 1 through 46, above, as though fully set forth herein.

48. At all times material to this Complaint, Defendant KEAUHOU URGENT CARE CENTER had a duty to staff its health care center with reasonably competent, educated, trained, and experienced employees, agents, and/or servant health care providers, health care professionals, nurses, and physicians.

49. At all times material to this Complaint, Defendant KEAUHOU URGENT CARE CENTER had a duty to prevent its employees, agents, and/or servant health care providers, health care professionals, nurses, and physicians, and each of them, who were not reasonably competent to treat or attempt to treat patients from treating said patients.

50. Defendant KEAUHOU URGENT CARE CENTER had a duty to adequately supervise its employees, agents, and/or servant health care providers, health care professionals, nurses, and physicians who were employed in its health care center.

51. Defendant KEAUHOU URGENT CARE CENTER breached its duties by negligently employing employees, agents, and/or servant health care providers, health care professionals, nurses, and physicians not competent by way of training, education, and/or experience to treat and monitor patients and by thereafter failing to adequately supervise them.

52. Defendant KEAUHOU URGENT CARE CENTER's negligent hiring, assignment, retention, training, and/or supervision of its employees, agents, and/or servant health care providers, health care professionals, nurses, and physicians, was the direct, proximate, and legal cause of Plaintiff CATHERINE MCCLURE's injuries and damages.

## DAMAGES

53. Plaintiffs incorporate by reference paragraphs 1 through 52, above, as though fully set forth herein.

54. As a result of the negligent conduct and omissions of Defendants, Defendants' employees, agents, and/or servant health care providers, health care professionals, nurses, and physicians, and each of them, Plaintiff CATHERINE MCCLURE's right eye suffered a permanent central scar greater than 50% depth on her right cornea that has caused significant vision loss in her eye.

55. As a result of the negligent conduct and omissions of Defendants, Defendants' employees, agents, and/or servant health care providers, health care

professionals, nurses, and physicians, and each of them, Plaintiff CATHERINE MCCLURE's doctors recommend that she undergo a corneal transplant. Plaintiff CATHERINE MCCLURE's first corneal transplant will only last approximately 10-15 years, and each transplant thereafter will have a shorter life expectancy, until she is unable to have further corneal transplants. Because of her young age, there will come a time when Plaintiff CATHERINE MCCLURE will need to accept her loss of vision.

56.   As a result of the negligent conduct and omissions of Defendants, Defendants' employees, agents, and/or servant health care providers, health care professionals, nurses, and physicians, and each of them, Plaintiff CATHERINE MCCLURE suffered and continues to suffer severe pain and permanent damage to, and vision loss in, her right eye.

57.   As a result of the negligent conduct and omissions of Defendants, Defendants' employees, agents, and/or servant health care providers, health care professionals, nurses, and physicians, and each of them, Plaintiff CATHERINE MCCLURE suffered general and special damages in an amount to be proven at trial, in excess of $75,000, exclusive of interest and costs.

58.   As a result of the negligent conduct and omissions of Defendants, Defendants' employees, agents, and/or servant health care providers, health care professionals, nurses, and physicians, and each of them, Plaintiff CATHERINE

MCCLURE suffered, and continues to suffer severe, permanent, and painful injuries to her right eye. Said injuries have caused, and will continue to cause, Plaintiff CATHERINE MCCLURE great physical, mental, and emotional pain and suffering, serious emotional distress and mental anxiety, all to her general damage in an amount to be determined at the time of trial herein.

59.  As a result of the negligent conduct and omissions of Defendants, Defendants' employees, agents, and/or servant health care providers, health care professionals, nurses, and physicians, and each of them, Plaintiff CATHERINE MCCLURE was forced to incur, and will continue to incur in the future, various medical costs and expenses, all to her special damage in an amount to be determined at the time of trial herein.

60.  As a result of the negligent conduct and omissions of Defendants, Defendants' employees, agents, and/or servant health care providers, health care professionals, nurses, and physicians, and each of them, Plaintiff CATHERINE MCCLURE has lost, and will continue to lose, wages, income, benefits, and earning capacity, all to her special damage in an amount to be determined at the time of trial herein.

61.  As a result of the negligent conduct and omissions of Defendants, Defendants' employees, agents, and/or servant health care providers, health care professionals, nurses, and physicians, and each of them, Plaintiff CATHERINE

MCCLURE suffered, and will continue to suffer in the future, other general and special damages to be shown at the time of trial.

WHEREFORE, Plaintiff CATHERINE MCCLURE prays for judgment against Defendants STEPHEN H. DENZER, M.D.; KEAUHOU URGENT CARE CENTER, INC., and DOE DEFENDANTS 1-100, and each of them, as hereinafter set forth:

1. For general damages in amounts to be proven at trial;

2. For special damages in amounts to be proven at trial;

3. For costs of suit and expenses of litigation;

4. Pre-judgment interest from August 5, 2015;

5. Post-judgment interest; and

6. Any and all other relief as may be deemed just and equitable by the Court.

DATED: Honolulu, Hawaii  July 20, 2017  .

Richard Turbin
Rai Saint Chu
Janice D. Heidt

Attorneys for Plaintiff
CATHERINE MCCLURE